IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No: 7:15-CR-69-FL(1)

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | GOVERNMENT'S PROPOSED FINDINGS OF |
| vs. ) | FACT AND CONCLUSIONS OF LAW |
| ) | |
| RICHARD RYAN SPEELMAN ) | |

INTRODUCTION

On July 28, 2015, the Defendant, Richard Ryan Speelman, was indicted by a federal grand jury with ten counts of receipt of child pornography pursuant to Title 18 United States Code § 2252(a)(2) and one count of possession of child pornography pursuant to Title 18 United States Code § 2252(a)(4)(B). (D.E. 1). On or about August 13, 2015 a motion for a psychiatric Exam to determine competency was filed by the Defendant. (D.E. 19). The Government did not oppose this motion. On or about November 6, 2015, the Defendant filed a motion to continue the competency hearing and secure a second private opinion as to competency. (D.E. 26). This motion was allowed.

On April 14, 2016, a contested competency hearing was held in New Bern before the Honorable Robert B. Jones, United States Magistrate Judge. The Government presented two witnesses, Dr. Dana Brauman, a forensic psychologist from Metropolitan Correctional

Center, and Detective Jason Oakes, Task Force Officer with the Federal Bureau of Investigation. The defendant also presented two witnesses, Dr. Jerry Sloan, clinical psychologist, and defendant's father, Ricky Speelman. Dr. Brauman's report on competency was filed at Docket Entry 25, and Dr. Sloan's was filed at Docket Entry 29.

The United States, by and through the United States Attorney's Office for the Eastern District of North Carolina, hereby submits its Proposed Findings of Fact and Conclusions of Law.

PROPOSED FINDINGS OF FACT

1. Defendant was evaluated by Dr. Dana Brauman on September 8, 10, 14, 17, 21 and 29 of 2015 at the Metropolitan Correction Center in New York. (D.E. 25, p. 1).

2. Dr. Dana Brauman is a licensed clinical psychologist with a specialization in forensic psychology and has completed over 200 examinations of various Defendants in order to make determinations of competency to stand trial.

3. Dr. Brauman has been qualified as an expert in federal court regarding her determinations of competency at least 15 times previously. Dr. Brauman was tendered and accepted as an expert in competency evaluation and forensic psychology on April 14, 2016 before the Honorable Robert B. Jones.

2

4. Dr. Brauman testified via video conference and was able to identify the Defendant, Richard Ryan Speelman, as the individual she evaluated regarding competency for this hearing.

5. Dr. Brauman performed her evaluation pursuant to a Court order issued by Judge Flanagan on August 13, 2015. Dr. Brauman was appointed by the chief psychologist at the Bureau of Prisons to conduct the evaluation.

6. Dr. Brauman reviewed prosecution reports, the indictment, school records of the Defendant, private investigation documents provided to her by the defendant, NCIC records and Federal Bureau of Prison documents in completing her assessment and evaluation. (D.E. 25, p. 2).

7. In reviewing school records, Dr. Brauman found a well-documented history of learning disabilities in the Defendant, starting at an early age. (D.E. 25, p. 3-5).

8. The Defendant was given a Wechsler intelligence test for children in 1999 and scored in the low average to average range of intellect. (D.E. 25, p. 4).

9. The Defendant struggled with reading and spelling but had no noted intellectual deficits. (D.E. 25, p. 4).

10. The Defendant graduated from high school and completed a two year post high school vocational training certificate in automotive technology in 2008. (D.E. 25, p. 4-5).

11. A review of medical history of the Defendant showed a diagnosis for Attention Deficit Hyperactivity Disorder as a child and diabetes related to obesity. (D.E. 25, p. 6-7).

12. The Defendant was diagnosed with diabetes at age 16 that requires medication. The defendant is able to monitor and manage his own insulin and other medications for this diagnosis. (D.E. 25, p. 7).

13. Dr. Brauman noted that the Defendant had no communication issues, managed his own personal care and hygiene without difficulty, utilized electronic mail and telephone systems and was able to discuss daily events and the evaluation in detail. (D.E. 25, p. 7-8).

14. Dr. Brauman and others noted that the Defendant had normal speech, affect, thought processes, grooming and orientation. A preliminary diagnosis of mental retardation by a staff psychiatrist was reversed. (D.E. 25, p. 8-9).

15. Dr. Brauman conducted her own psychological testing with the Defendant. (D.E. 25, p. 9-10).

16. Dr. Brauman first administered a Shipley-2 test, which is a timed, self-administered measure of cognitive functioning and

impairment. This test measures crystallized ability and fluid cognitive ability. Because it was a timed test, the Defendant appeared to have difficulty completing the test and Dr. Brauman believed that the results were not valid as to this Defendant. The Defendant scored in the low range, possibly due to learning disabilities. (D.E. 25, p. 9).

17. Dr. Brauman next administered the Reading Level Indicator, an untimed test of vocabulary and reading comprehension. The Defendant scored at the sixth grade instructional reading level and fourth grade independent reading level. (D.E. 25, p. 9).

18. Dr. Brauman next administered the Personality Assessment Inventory (PAI), a self-report measure of personality characteristics, psychological adjustment and response bias or malingering. This test was offered via audiotaped version at the Defendant's request based on his previous diagnosis of learning disabilities. The Defendant was attentive during this test, responded appropriately and showed adequate comprehension. The results found no chronic or acute psychopathology, no elevation in clinical profile and no mental health disease. The Defendant presented no issues with mood disturbance, impulsivity, physical dysfunction or self-harm. (D.E. 25, p. 9-10).

5

19. Finally, Dr. Brauman administered the Wechsler Adult Intelligence Scale (WAIS). This test is similar to the test previously given to the Defendant in 1999 when he was a child. This test is not self-administered allowing for more observation. Similar to the results in 1999, this Defendant scored in the low average to average range on all tests. The Defendant was in the borderline range for verbal reasoning and long-term storage of factual information, average for lexical knowledge and low average for general information. The Defendant scored in the average range for non-verbal reasoning and visual processing abilities. The Defendant scored in the low average range for working memory, and average range for processing speed. Dr. Brauman observed that the Defendant gave good effort, was cooperative and did not show deficits in all realms of testing. The Defendant showed the most deficits in verbal comprehension. (D.E. 25, p. 10).

20. These results were consistent with the Defendant's intellectual functioning as a child and the results of the Wechsler measure administered to the Defendant during his childhood. These results would not be expected to change over time. (D.E. 25, p. 10).

21. Dr. Brauman found that these scores "are not consistent with severe cognitive limitations or Mental Retardation." (D.E. 25, p. 10).

22. Dr. Brauman also noted that the Defendant had social anxiety and concerns about being judged. (D.E. 25, p. 10-11). Dr. Brauman found this to be normal given the Defendant's current charges and incarceration.

23. The Defendant answered all questions appropriately, was cooperative throughout the evaluation, responded to all inquiries, asked for clarification as needed and had coherent and linear thought. (D.E. 25, p. 10-11).

24. The Defendant was fully oriented to time, place, person and circumstance and expressed expected anxiety about his case. (D.E. 25, p. 10-11).

25. Dr. Brauman diagnosed the Defendant as having two specific learning disorders, one for reading and one for written expression. Dr. Brauman came to this conclusion by reviewing the testing, by observing the Defendant over time and by reviewing all documentation provided. (D.E. 25, p. 11-12).

26. Dr. Brauman also diagnosed the Defendant with pedophilic disorder. According to the Diagnostic and Statistical Manual of Mental Disorders – Fifth Edition (DMS-5), this disorder "consists of recurrent, intense sexually arousing fantastic, sexual urges, or behaviors involving sexual activity with a prepubescent child or children." (D.E. 25, p. 12). This diagnosis does not require an actual

7

victim. The Defendant admitted to Dr. Brauman that he has a sexual attraction to both adult females and young girls. Specifically, the Defendant indicated he prefers prepubescent females approximately 10 years of age or older. The Defendant described satisfying his sexual urges by masturbating to child pornography and using lifelike baby dolls. (D.E. 25, p. 12-13).

27. Detective Jason Oaks also testified that during a search of the Defendant's bedroom, multiple lifelike baby dolls were located and the Defendant made statements that his bodily fluids would be found on the same. (D.E. 40, Gov't Ex. 1 and 5). The Defendant also confessed to downloading child pornography. This evidence corroborated the statements given to Dr. Brauman by the Defendant.

28. Finally, Dr. Brauman diagnosed the Defendant as having avoidant personality disorder. (D.E. 25, p. 13-24). This disorder involves an "enduring, inflexible pattern of inner experience and behavior that deviates markedly from the expectations of an individual's culture." (D.E. 25, p. 13). This disorder has caused the Defendant to be socially isolated and intolerant of interpersonal conflict or criticism. (D.E. 25, p. 13). This disorder has also kept the Defendant from engaging socially. (D.E. 25, p. 13).

29. Neither Pedophilic Disorder nor Avoidant Personality Disorder are mental diseases or defects that affect a determination of competency to stand trial.

30. Dr. Brauman concluded that the Defendant is competent to stand trial. (D.E. 25, p. 14-18). Dr. Brauman found that the Defendant has factual and rational knowledge related to the court system and his own case and that the Defendant is currently able to assist with his own defense. (D.E. 25, p. 14-18).

31. Dr. Brauman did not find any evidence to support the hypothesis that the Defendant is "grossly impaired by any severe cognitive or intellectual deficits." (D.E. 25, p. 16).

32. Dr. Brauman has no interest in the ultimate outcome of the case and no bias as it relates to this Defendant.

33. Detective Jason Oakes testified that a transcript of plea related to the Defendant in State Court in Onslow County indicated that the Defendant understood his rights and self-reported that he could read and write at a 10th grade level. (D.E. 40, Gov't Ex. 8).

34. Ricky Speelman, father of the Defendant, testified that the Defendant had worked consistently for the past five years at a local hospital filling oxygen tanks and completing other tasks. Mr. Speelman testified that he acquired the job for the Defendant and that it took quite a while for the Defendant to learn the job duties.

9

35. Ricky Speelman testified that, although it took many tries, the Defendant was able to obtain his driver's license and often drove to work.

36. Ricky Speelman also testified that the Defendant played football in high school for a brief time.

37. Dr. Jerry Sloan testified that he is a licensed clinical psychologist in North Carolina. Dr. Sloan has been qualified as an expert in State court and possibly a few times in Federal Court, although he could not recall the exact amount of times.

38. Dr. Sloan agreed that the Defendant was diagnosed as having learning disabilities at a very early age. (D.E. 29, p. 2).

39. Dr. Sloan was aware that the Defendant played football briefly in high school. (D.E. 29, p 3).

40. Dr. Sloan completed various testing with the Defendant as well. First, Dr. Sloan performed the Kaufman Brief Intelligence test with the Defendant. This is an untimed, self-administered test. (D.E. 29, p. 5-6). The Defendant scored very low on this test. (D.E. 29, p 5-6).

41. Dr. Sloan also administered the Validity Indicator Profile (VIP), to determine whether the Defendant was malingering. This test was found to be invalid. (D.E. 29, p. 6)

42. A third test was administered to the Defendant, the Woodcock-Johnson Psycho-educational Battery (WJ-III, NU). This test showed that the Defendant functioned on reading and written skills at a level between the second and third grade. (D.E. 29, p. 6). The Defendant scored much higher in his math performance, at the level of a sixth grader. (D.E. 29, p. 6).

43. Finally, Dr. Sloan administered the MacArthur Competence Assessment Tool Criminal Adjudication (MAC CAT-A). (D.E. 29, p. 6).

44. This test revealed that the Defendant had no impairment in understanding a hypothetical criminal case, but showed impairment in reasoning "about the case given additional factual information and appreciation of his own circumstances." (D.E. 29, p. 6).

45. These results are consistent with exams suggesting low self-confidence, limitations of expressive abilities and problems in relating to other people. (D.E. 29, p. 6-7).

46. Dr. Sloan noted that the Defendant was cooperative and compliant, had no abnormalities in speech and no evidence of tangential thinking. (D.E. 29, p. 7). The Defendant's thoughts were "free of delusions and hallucinations and his thought was logical, coherent, linear and rational." (D.E. 29, p. 7).

47. Dr. Sloan found that the Defendant had "a very good appreciation of the possible alternatives available in the litigation process." (D.E. 29, p. 7).

48. Dr. Sloan found that the Defendant does not appear to be suffering from either an affective psychosis or a cognitive psychosis "of any kind." (D.E. 29, p. 7).

49. Dr. Sloan agreed that most people learn from repetition and patience and that people with little experience in the court system may need to be educated on terminology. Dr. Sloan opined that it takes the Defendant much longer to understand terminology.

50. In his written report to the Court, Dr. Sloan concluded that the Defendant is "likely to be judged competent to stand trial." (D.E. 29, p. 8). However, during his oral testimony Dr. Sloan opined that he does not believe the Defendant can assist his attorney. This conclusion is not documented in Dr. Sloan's written report to the Court.

51. Dr. Sloan agreed during his testimony that the Defendant understands the charges against him, but is not sure he understands the magnitude.

52. Dr. Sloan acknowledges that he never tested the Defendant for Mental Retardation and did not diagnosis him as having the same.

53. Dr. Sloan was aware that the Defendant confessed to downloading and utilizing child pornography for sexual gratification and also that the Defendant possessed lifelike baby dolls used for sexual purposes. However, Dr. Sloan indicates that he believes the child pornography and lifelike baby-dolls are just the Defendant's "sex life." Dr. Sloan rejected a diagnosis of Pedophilic Disorder based on this "sex life" hypothesis.

54. Dr. Sloan acknowledged that throughout his report he utilized diagnoses from outdated versions of the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM). (D.E. 29, p 7). Dr. Sloan also acknowledges that he described the Defendant's diagnoses using the "Axis" system that is no longer used in the most recent version of the DSM. (D.E. 29, p. 9-10).

55. Dr. Sloan acknowledged that he discussed with the Defendant that he was "there to assist you" and that the "results would be shared for the benefit of your case." (D.E. 29, p 7).

56. Dr. Sloan acknowledges that he was chosen specifically by the Defendant to complete the evaluation.

57. Dr. Sloan also acknowledges that the Defendant "understood that the charges against him might make him something of a target in the prison population, and this appeared to be one of the reasons

that he was reticent with respect to interacting with other inmates."
(D.E. 29, p. 7).

CONCLUSIONS OF LAW

1.  Jurisdiction and venue are proper in this court.  All parties have been correctly designated and are properly before the court.

2.  The issue before the Court is whether or not Defendant is competent to stand trial.

3.  Pursuant to Federal statute, the Defendant will be found incompetent if he is presently "suffering from a mental disease or defect" rendering him unable to understand the "nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. 4241(a).  The test to determine whether the defendant is competent to stand trial is whether the "defendant has sufficient present ability to consult with his lawyer with reasonable degree of rational understanding, and whether he has a rational as well as factual understanding of the proceedings against him." See, United States v. Mason, 52 F. 3d 1286, 1289 (4th Cir. 1995) citing, Dusky v. United States, 362 U.S. 402, 402 (1960).

4.  Based on the entirety of the evaluations, testing, interaction with the Defendant, records, interviews and prosecution

reports, Dr. Brauman found the Defendant was competent to stand trial.

5.   While learning disabilities are considered a mental defect, the Defendant has failed to demonstrate that he is currently suffering from a mental disease or defect rending him incompetent.

6.   The Defendant has further failed to demonstrate that he is currently unable to assist properly in his defense.

7.   For the foregoing reasons, the Defendant should be found competent to stand trial and readily able to assist in his defense. Respectfully submitted this 22nd day of April, 2016.

JOHN STUART BRUCE
Acting United States Attorney

*/s/ Carrie D. Randa*
Carrie D. Randa
Assistant United States Attorney
Criminal Division
U.S. Attorney's Office, EDNC
310 New Bern Avenue, Suite 800
Raleigh, North Carolina 27601
Telephone: 919-856-4849
Fax: 919-856-4487
Email:carrie.randa@usdoj.gov
NC State Bar No.38448

CERTIFICATE OF SERVICE

I certify that I have on this 22nd day of April, 2016, served a copy of the foregoing Response upon counsel for the defendant by electronic filing and electronic mail to:

>Mr. William Peregoy
>wtplawoffice@gmail.com

>*/s/ Carrie D. Randa*
>CARRIE D. RANDA
>Assistant United States Attorney
>Criminal Division
>U.S. Attorney's Office, EDNC
>310 New Bern Avenue, Suite 800
>Raleigh, North Carolina 27601
>Telephone: 919-856-4849
>Fax: 919-856-4847
>Email:carrie.randa@usdoj.gov
>NC State Bar No.38448