IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:15-CR-69-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| RICHARD RYAN SPEELMAN, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court to determine whether Defendant is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, in accordance with 18 U.S.C. §§ 4241 and 4247(d).

## I. PROCEDURAL BACKGROUND

On July 28, 2015, Defendant was indicted by a federal grand jury with ten counts of receipt of child pornography pursuant to 18 U.S.C. § 2252(a)(2) and one count of possession of child pornography pursuant to 18 U.S.C. § 2252(a)(4)(B). [DE-1]. On August 13, 2015, Defendant filed an unopposed motion pursuant to 18 U.S.C. § 4241 seeking the court to order a hearing to determine Defendant's competency and, preliminarily thereto, to order a psychiatric or psychological examination of Defendant for that purpose. [DE-19]. The court allowed Defendant's motion and, in accordance with 18 U.S.C. §§ 4241 and 4247, committed Defendant to the custody of the Attorney General to undergo psychological and/or psychiatric examination, the purpose of which was to determine whether there is reasonable cause to believe Defendant to be presently suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to assist properly in his defense. [DE-20]. The court directed further that a licensed or certified psychiatrist or psychologist prepare a report pursuant to 18 U.S.C. § 4247(c) and provide copies to Defendant's

counsel and the Assistant United States Attorney. *Id.* Once the report was completed and received, a hearing would be held to address Defendant's competency. *Id.*

On October 9, 2015, a report was prepared by Forensic Psychologist Dana Brauman, Psy.D., United States Public Health Service. [DE-25]. In her report, Dr. Brauman concluded Defendant is competent to stand trial and assist in his defense. *Id.* Thereafter, on November 6, 2015, Defendant filed a motion to continue the competency hearing in order to secure a second psychological examination [DE-26], which the court allowed [DE-27].

On December 27, 2015, Defendant submitted a report from licensed psychologist, Dr. Jerry L. Sloan, Ph.D., ABPP. [DE-28-1]. Dr. Sloan expressed disagreement regarding the various testing performed by Dr. Brauman and, while expressing reservations about Defendant's ability to understand and assist in his defense, offered his prediction with reluctance that Defendant would likely be judged competent to stand trial. *Id.* On January 7, 2016, Defendant filed a supplemental report authored by Dr. Sloan. [DE-29-1].

## II. COMPETENCY HEARING

On April 14, 2016, this court held a hearing to determine whether Defendant is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, in accordance with 18 U.S.C. §§ 4142 and 4247(d). At the hearing the Government was represented by Assistant United States Attorney Carrie Randa and Defendant, who was present in the courtroom, was represented by William Peregoy. The court advised Defendant of his rights under 18 U.S.C. § 4247(d), which Defendant indicated he understood, and Defendant indicated that he was prepared to go forward with his case. The Government presented the testimony of two witnesses: Dr. Brauman and Detective Jason Oakes, a member of the Wilmington Police Department

and a Task Force Officer with the Federal Bureau of Investigation ("FBI"). Defendant presented the testimony of two witnesses: Dr. Sloan and Defendant's father, Ricky Speelman. At the conclusion of the hearing, the court directed the parties to file proposed findings of fact and conclusions of law within ten days. The Government filed proposed findings of fact and conclusions of law on April 22, 2016. [DE-41]. No filing was received from Defendant.

### A. Dr. Dana Brauman

Dana Brauman, Psy.D., a licensed forensic psychologist employed by the Bureau of Prisons Metropolitan Correctional Center ("MCC"), examined Defendant and submitted a competency evaluation to the court. Dr. Brauman interviewed and examined Defendant throughout September 2015 when he was a resident of the MCC. She also reviewed his school records and criminal history. Dr. Brauman's hearing testimony was consistent with her report. Without objection, the court allowed Dr. Brauman to testify as an expert in competency and forensic psychology.

According to Dr. Brauman, Defendant was evaluated on September 8, 10, 14, 17, 21, and 29, 2015, during which time he was observed to be quiet and cooperative and did not appear to be very socially engaged or have any overt conflicts. Defendant adequately managed his personal care needs and was able to navigate the medical facility without difficulty, independently reporting on time to his appointments. Defendant also appeared to be capable of self-advocacy, as he used the inmate e-mail system to schedule a doctor's appointment and wrote Dr. Brauman a relevant question after one of his appointments was rescheduled. Defendant adequately monitored his diabetes. Defendant's monitored telephone calls to his family revealed he had a rational awareness of his situation, as he provided his family with a description of his daily activities and the purpose of the evaluation. Furthermore, there was no evidence of psychotic disturbance or cognitive limitations

3

during these calls and Defendant did not report any acute psychological distress or appear to be in any acute distress.

Defendant was seen by staff psychiatrist Dr. Okafor for a routine psychiatric consultation. Dr. Okafor offered a provisional diagnosis of mental retardation, however, he noted the diagnosis was primarily based on the limited available data, including Defendant's self-report of having been incarcerated secondary to child pornography charges, taking Ritalin as a child, and attending special education classes due to problems with reading comprehension. Dr. Brauman subsequently consulted with Dr. Okafor after performing psychological testing on Defendant. It was agreed that although Defendant may have some social deficits, Defendant does not meet the criteria for mental retardation.

Defendant was administered the Shipley-2, a timed and self-administered measure of cognitive and intellectual functioning and impairment. The test measures two aspects of cognitive ability: (1) crystallized ability (the knowledge which has been gained as a result of education and experience), and (2) fluid cognitive ability (the ability to use logic and other skills to learn and acquire new information). Defendant obtained a composite score of 54, which indicates that his overall intellectual abilities are in the low range. Defendant's crystallized abilities were measured at 55, and his fluid cognitive abilities measured at 63, all within the low range. However, because Defendant failed to complete the timed examination, and based on her knowledge of Defendant's learning disabilities, Dr. Brauman considered Defendant's score to under-represent his actual cognitive functioning and did not consider the Shipley-2 results valid in measuring the totality of Defendant's intellect.

Defendant was administered the Reading-Level Indicator (RLI), an untimed self-administered

4

measure used to identify an individual's reading ability at a second to twelfth grade level. Overall Defendant's performance placed his independent reading ability roughly at the fourth grade level and his instructional reading ability at the sixth grade level.

Defendant completed the Personality Assessment Inventory (PAI), a self-report measure of personality characteristics, psychological adjustment, and response bias. Defendant chose to use an audiotaped version of the test to assist with his difficulty in reading comprehension. The results indicated no clinical elevations, suggesting no evidence of mood disturbance, grave anxiety disturbance, psychosis, or any other serious concern.

Defendant was administered the Wechsler Adult Intelligence Scale—Fourth Edition (WAIS-IV), an individually administered intelligence test utilized to assess different areas of cognitive and intellectual functioning, such as an individual's verbal and nonverbal abstract reasoning abilities, working memory, and processing speed. Defendant achieved a Full Scale IQ (FSIQ) score of 81, in the low average range of functioning. However, Dr. Brauman noted the overall score should be considered with suspicion because the results of the individual subtests were varied. Rather, Dr. Brauman thought the individual subtest scores were more revealing. Review of these scores revealed Defendant obtained a Verbal Comprehension Index (VCI) score of 76, indicating that his abilities in verbal reasoning and long-term storage of factual information fall in the borderline impaired range. Defendant scored in the average range of functioning for lexical knowledge, although his performance was low average for a measure of general information and fund of knowledge. Defendant's Perceptual Reasoning Index (PRI) score was 90, which indicated that Defendant's non-verbal reasoning and visual processing abilities were in the average range. Defendant consistently scored in the average range in three separate measures of non-verbal reasoning, including tasks of

5

spatial relationships, visualization, and sequential reasoning. Defendant's Working Memory Index (WMI) score was 83, which reveals that his short-term memory, working memory, and auditory attention are in the low average range. On a test of his memory span, Defendant scored in the low average range. Defendant obtained an average score in a test of quantitative reasoning, working memory, and calculation. Defendant's Processing Speed Index (PSI) score was 92, which places his visual and motor processing speeds in the average range of functioning, and he scored in the average range on tests of perceptual speed. According to Dr. Brauman, the tests revealed no evidence of mental retardation but when combined with Defendant's childhood academic history, suggest the presence of learning disabilities. Defendant's WAIS-IV test results were consistent with the results from a Weschler measure for children (WISC) Defendant took in 1999, which revealed Defendant had low average to average intellectual skills. Dr. Brauman explained that one would expect these scores to be consistent as intellect does not change dramatically with age.

Based on Dr. Brauman's interviews with Defendant, Defendant was well-oriented and aware of his circumstances and surroundings. There was no evidence of any personal care deficits, and Defendant presented himself appropriately. Defendant appeared calm and cooperative and he did not describe any significant mood disturbances. Defendant reported feeling nervous about his case but his description was consistent with regular adjustment concerns, not a true mood or anxiety disorder. During conversation, Defendant spoke with normal rate, tone, and volume, although his responses were sometimes delayed. No gross articulation difficulty was detected.

Based on her observations and testing of Defendant and a review of his academic performance, Dr. Brauman diagnosed Defendant with two specific learning disorders: impairments

6

in reading and written expression.[1] Defendant's cognitive testing revealed he is of low average to average intellect overall. Additionally, school records document a long-standing difficulty in speech and language throughout Defendant's education.

According to Dr. Brauman, Defendant has an adequate basic factual and rational knowledge of courtroom terminology, procedures, and personnel, and he was attentive and easily educated on terms with which he was unfamiliar. For example, Defendant recalled the reason he was sent to the MCC. Defendant defined competency to mean "to understand" and suggested if an individual were found not competent to stand trial, he would need to go for more testing. After further clarification and upon delayed review, Defendant indicated that one would have to go to a facility until he was found competent. Defendant appeared to understand the charges against him and the social implications of those charges, noting he does not share the nature of his alleged offenses with other inmates. Defendant described the available pleas as "guilty or not guilty" and understood what they meant. Defendant correctly defined "oath" and had heard of the term "perjury" but did not know what it meant. After instruction, Defendant indicated he understood perjury to mean lying under oath. After explanation, Defendant understood a verdict to be either a judge or jury determining whether the defendant was guilty or not guilty. Defendant knew that federal sentences were calculated using a sentencing chart, but did not know how to read the chart. When Defendant was provided additional clarification about the Federal Sentencing Guidelines he expressed confidence that he will learn about his guidelines and receive additional explanation from his attorney. Defendant identified factors that could be considered at the time of sentencing and correctly

---

[1] While Dr. Brauman offered two other diagnoses, it is undisputed that neither of these affects Defendant's competency to stand trial.

7

described a plea bargain. Defendant understood the benefits of accepting a plea bargain in that he could receive "less" time, while the prosecution would benefit by not having to go through the long process of a trial. Defendant also knew he would forfeit the right to "re-trial" if he accepted a plea bargain and was amenable to education regarding other rights he would waive by accepting a plea, such as the right to remain silent and the right to a jury trial.

Overall, Defendant exhibited mild naivete but was open to instruction, retained information provided to him, and demonstrated an adequate understanding of the adversarial nature of court proceedings. Defendant also understood how to act appropriately in the courtroom. Defendant described a positive relationship with his attorney and feels they share a mutual respect. Defendant denied having any arguments or conflicts with his attorney. While Defendant indicated he does not know much about the law, he stated he trusts his attorney's understanding and advice. While Defendant acknowledged he has trouble understanding sometimes, he feels comfortable asking his attorney to explain and noted that his attorney helps him to understand by repeating and restating information. In fact, according to Dr. Brauman, Defendant denied there being a time when his attorney was unable to explain something to him adequately. Nothing suggested that Defendant had communication failures or delusional beliefs in regard to his attorney, and Defendant was able to coherently discuss the allegations and the evidence being used against him in his case. Defendant was able to discuss his options and potential outcomes. Defendant is prepared to listen to his attorney regarding his options and whether to Defendant should testify in his own defense.

Dr. Brauman opined that Defendant is competent to stand trial. Her opinion is based on her interactions with Defendant, results from psychological testing, review of records, and her conversations with counsel and Defendant's father. Although Dr. Brauman considers Defendant's

8

learning disability to be a mental defect, she opined Defendant has a rational and factual understanding of the proceedings against him and can assist in his defense. Given the presence of a lifelong learning disability, Dr. Brauman recommended continued accommodation efforts in order to facilitate his learning and understanding of relevant case material and concepts related to his defense.

**B.     Jason Oakes**

Jason Oakes ("Detective Oakes") is a detective with the Wilmington Police Department and a member of the Child Exploitation Task Force who executed a search warrant at the home of Defendant's parents, where Defendant was living at the time. Detective Oakes met with Defendant at the scene as part of the warrant execution and had the opportunity to interview and observe Defendant. According to Detective Oakes, nothing appeared out of the ordinary in Defendant's responses to his questions and Defendant appeared to understand the questioning. During their discussion, Defendant defined child pornography, told Oakes that he used a computer, and described his computer use and control of computers in the home, including the use of several different file-sharing programs and purchase of items via the internet. Defendant also provided the description and purposeful location of relevant items found at the scene.

**C.     Ricky Speelman**

Defendant's father, Ricky Speelman ("Mr. Speelman"), testified to Defendant's struggle with his education. During Defendant's schooling, for example, Defendant was unable to grasp concepts of his school assignments to the point where his teachers provided him with the answers and passed him along in his classes. Defendant's parents also assisted Defendant with his homework and essentially completed it for him. During high school, Defendant played football, which did not last

9

long because Defendant could not learn the plays or requisite skills. After high school, Defendant attended a community college where he took automotive science classes. While Defendant held a job working on cars after college, his job did not last long because Defendant did not know what he was doing. Defendant subsequently held a job at a hospital filling oxygen tanks. Even though it was an unsophisticated position, Defendant required a lot of training. Defendant has a driver's license although it took him four to five months to learn to drive and he failed the exam several times. During his childhood, Defendant had no friends and other kids would not play with him. Mr. Speelman described that he and his wife have been patient and repetitious with Defendant his entire life. According to Mr. Speelman, Defendant is capable of learning but it takes him a long time. Defendant knows how to work with computers and has a computer in his room.

### D. Dr. Jerry Sloan

Dr. Sloan has been a self employed board-certified licensed clinical psychologist for 45 years. Dr. Sloan reviewed Dr. Brauman's report, examined Defendant for a period of seven hours, and spoke with counsel and Defendant's father before submitting his report. Dr. Sloan's testimony differed from his report in that Dr. Sloan opined in his hearing testimony as to Defendant's competency; whereas, his report contains his observations of Defendant and simply a prediction as to whether Defendant would be found competent by the court. Without objection, the court allowed Dr. Sloan to testify as an expert in the field of clinical psychology.

While Dr. Sloan generally agrees with Dr. Brauman's evaluation of Defendant, he would have been more inclined to accept the results of the Shipley-2 examination based on the totality of Defendant's presentation. Dr. Sloan administered the Kaufman Brief Intelligence Test, an untimed test, to measure Defendant's crystalized and fluid cognitive abilities. The results of the test fell

10

Case 7:15-cr-00069-FL   Document 43   Filed 06/02/16   Page 10 of 16

within the range of mild retardation. Dr. Sloan concluded that Defendant demonstrated weakness in his crystalized abilities, specifically his verbal reasoning skills necessary for appreciating courtroom procedures. According to Dr. Sloan, one's crystalized abilities are the most important in terms of being able to appreciate a court proceeding and the WAIS, while a measure of intelligence, is not an accurate measure of one's abilities to understand charges and assist in one's defense. According to Dr. Sloan, language skills and comprehension, not intelligence, are the most important factors in determining competency to proceed. The Kaufman test revealed that Defendant has great difficulty with expressing and understanding language as reflected in his educational history. Defendant's overall language abilities and nonverbal reasoning were like that of an eight-year-old child.

Dr. Sloan next administered the MacAurthur Competence Assessment Tool (MACCAT) in order to evaluate Defendant's ability to understand court proceedings. This tool measures one's ability to appreciate a hypothetical situation, how a situation may change with the addition of new information, and an individual's ability to appreciate his own situation, rather than simply asking Defendant to repeat information that has been taught. Defendant's scoring indicated he had an adequate understanding of the facts in a hypothetical crime scenario, but his reasoning about the hypothetical scenario and his understanding of his own situation were significantly impaired. Dr. Sloan affirmed his statement contained in his report that Defendant would likely be judged competent based on the imprecise standard of competency under the law. Dr. Sloan, like Dr. Brauman, observed that Defendant appeared compliant, cooperative, without delusions, hallucinations, mental disease, gross abnormalities in speech, and also seemed to be logical, coherent, immature, and unsophisticated.

11

While Dr. Sloan concluded that Defendant has the ability to understand the charges against him, Dr. Sloan testified he does not believe Defendant can assist in his defense compared to other defendants. According to Dr. Sloan, Defendant will have difficulties in assisting his attorney because he has limited appreciation for the severity of the offense that he has committed and he is naive and reliant on other authorities to tell him what to do, as opposed to being able to convey information independently. Dr. Sloan admits he did not include his opinion as to Defendant's competency in his written report, but explained he was asked to provide a prediction as to whether Defendant would be found competent, not to provide an opinion.

## III. STANDARD

By statute, Congress has prescribed the following guidelines for when trial courts should conduct mental competency hearings to determine competency to stand trial:

> [a]t any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant . . . the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4241(a). The central inquiry of the mental competency test is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam).

The defendant has the burden of proving by a preponderance of the evidence that he is incompetent to stand trial. *United States v. Robinson*, 404 F.3d 850, 856 (4th Cir. 2005) (citing 18

12

U.S.C. § 4241(d)); *United States v. Brown*, No. 5:08-CR-369-FL-2, 2009 WL 4906572, at *1 (E.D.N.C. Dec. 18, 2009) (unpublished); *see also Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996) ("Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence.") (citing 18 U.S.C. § 4241). Psychological evaluations are typically the primary means for demonstrating incompetence to stand trial. *See United States v. Mason*, 52 F.3d 1286, 1290 (4th Cir. 1995) ("Medical opinions are usually persuasive evidence on the question of whether a sufficient doubt exists as to the defendant's competence.") (internal quotation marks and citations omitted). Where multiple experts have provided evidence as to a defendant's competency, the court "may find a defendant competent by adopting the findings of one expert and discounting contrary findings of another." *United States v. Mitchell*, 706 F. Supp. 2d 1148, 1151 (D. Utah 2010) (citations omitted); *see also United States v. Cristobal*, 293 F.3d 134, 144 (4th Cir. 2002) ("Assessing and evaluating the strength and weakness of two experts' conflicting testimonies is a task particularly within the fact finder's province, and here the district judge was not clearly erroneous in finding that Cristobal did not prove insanity by clear and convincing evidence."). The court may also consider other factors in determining competency, including the court's own observations of Defendant as well as lay testimony concerning a defendant. *Mitchell*, 706 F. Supp. 2d at 1151. In assessing the medical opinions of competency, the court should remain mindful that "[n]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000) (quoting *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir. 1984)). "Likewise, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial."

*Id.*

Finally, a finding by the court that a defendant is mentally competent to stand trial shall not prejudice Defendant in raising the issue of insanity as a defense to the charged offense, nor shall it be admissible as evidence in a trial for the offense charged. 18 U.S.C. § 4241(f).

## IV. DISCUSSION

After careful consideration of the evidence presented, this court finds that Defendant has failed to carry his burden of demonstrating by a preponderance of the evidence that he is unable to either understand the nature of the proceedings against him or to effectively assist in his defense as required. *See Robinson*, 404 F.3d at 856. Accordingly, this court finds Defendant is competent to proceed.

In making this determination, the court has credited Dr. Brauman's evaluation of Defendant over Dr. Sloan's, as Dr. Brauman was able to interact with Defendant for a considerably longer period of time. While at the MCC, Defendant was able to navigate the facility without assistance and independently attend his appointments. Defendant also e-mailed Dr. Brauman to reschedule an appointment. This evidence demonstrates Defendant's ability to appreciate and thrive in new and changing situations, contrary to the concern expressed by Dr. Sloan. This court's finding is further supported by evidence that while at the MCC Defendant adequately monitored his own diabetic condition and that Defendant's calls to his family members demonstrated his self-awareness and understanding.

While testing and interview evidence revealed Defendant has a low range of intellectual and cognitive functioning, it appears Defendant is able to explain the procedures and persons involved in the court process without leading inquiry from Dr. Brauman and that Defendant is aware of legal

14

terminology, as he is able to provide articulate responses to open-ended questions. Dr. Brauman's examination of Defendant appears to the court to be more than Defendant simply "parroting" information back to her, contrary to the defense argument. Rather, it appears after mild education, Defendant has been able to process and explain concepts. Furthermore, Dr. Sloan's ultimate opinion on Defendant's competency appears qualified by his assumption that Defendant's unfamiliarity with legal concepts and terminology may be due in part to Defendant's lack of criminal history. Indeed, the court's own colloquy with Defendant revealed that after the court explained the purpose of the competency hearing, Defendant indicated he understood the purpose of the hearing and was prepared to proceed. Moreover, Defendant explained to Dr. Brauman his ability and eagerness to work with his attorney. Even though Defendant may require some additional explanation from his attorney, the court finds Defendant has a rational and factual understanding of the proceedings and is able to consult with his attorney. *See United States v. Wiggin*, 429 F.3d 31, 35 (1st Cir. 2005) (affirming finding of competency despite the fact that the defendant was unable to define several legal terms when first asked, where after the defendant was explained the meaning of the terms, the defendant was able to recall those definitions); *see also United States v. Hogan*, 986 F.2d 1364, 1373 (11th Cir. 1993) ("Even perfectly competent defendants often do not fully comprehend the intricacies of some of the defensive theories offered by their lawyers. That level of comprehension is not a requirement of competency."); *United States v. Glover*, 596 F.2d 857, 867 (9th Cir. 1979) ("The fact that a defendant might not understand the proceedings unless they are explained to him in simple language would put additional burdens on counsel, but certainly does not establish that the defendant is incompetent to stand trial.").

The court also credits the consistency in scoring between the WAIS-IV and the WISC, which

15

Dr. Brauman used to support her ultimate opinion. Additionally, the court finds Detective Oakes' testimony to be credible. Specifically, Detective Oakes testified that he had a conversation with Defendant regarding the charges in this case and Defendant's computer-related knowledge, including his use of several different file-sharing programs and the internet. *See United States v. Allen*, No. 10-80175-CR, 2011 WL 4352793, at *24 (S.D. Fla. Aug. 26, 2011) (unpublished) (considering computer-related knowledge as relevant to competency to stand trial) (citing *United States v. McFall*, No. 07-411, 2011 WL 465718, at *13 (W.D. Pa. Feb. 4, 2011) (unpublished) (same) & *United States v. Doshier*, No. CR-09-042-RAW, 2009 WL 2230789, at *2 (E.D. Okla. July 23, 2009) (unpublished) (same)), *adopted by* 2011 WL 4352776 (S.D. Fla. Sept. 6, 2011). To be sure, this case is not without its challenges due to Defendant's limited cognitive abilities. However, as explained by Dr. Brauman, these difficulties may be alleviated through patient explanation of information and material to Defendant as this case proceeds.

## V. CONCLUSION

For these reasons, the court finds Defendant is competent and that this matter may proceed.

SO ORDERED, this the 2nd day of June 2016.

Robert B. Jones, Jr.
United States Magistrate Judge

16

Case 7:15-cr-00069-FL   Document 43   Filed 06/02/16   Page 16 of 16